IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ATW Health Solutions, Inc., | * | |
| *Plaintiff*, | * | |
| v. | * | Civil No. RDB-23-2048 |
| Vizient, Inc., | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Plaintiff ATW Health Solutions, Inc. ("ATW") and Defendant Vizient, Inc. ("Vizient") are both providers of health care consulting services. The parties entered a 36-month contract under which Vizient subcontracted work to ATW which Vizient was contractually bound to perform for the University of Maryland Medical System Corporation. ATW filed a Complaint in this Court for breach of contract on July 31, 2023. (ECF No. 1.) The Complaint essentially alleges that Vizient breached its contract when it demanded the accelerated completion of ATW's work and thereafter terminated the contract, refusing to pay ATW for the work it had performed ahead of the contractually agreed timeline.

Pending before this Court is Vizient's Motion to Dismiss.[1] (ECF No. 11.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons expounded below, Defendant Vizient, Inc.'s Motion to Dismiss is DENIED.

### BACKGROUND

---

[1] This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the parties have diversity of citizenship, and the amount in controversy exceeds $75,000.

1

Vizient is a provider of health care consulting services. (ECF No. 1 ¶ 2.) The company is incorporated in Delaware and maintains its principal place of business in Texas. (*Id.*) ATW, also a provider of health care consulting services, is incorporated and maintains its principal place of business in Illinois. (*Id.* ¶ 1.) In early August 2022, Vizient entered a 36-month contract with ATW. (ECF No. 1 ¶¶ 1–2.) The parties agreed that ATW would perform subcontracted work on behalf of Vizient, in line with Vizient's contract to provide health care consulting services to the University of Maryland Medical System Corporation ("UMMS"). (*Id.* ¶ 5.) ATW was responsible for, among other things, visiting fourteen hospitals and medical centers in the State of Maryland; assessing each location's patient-family engagement and health equity competencies, practices, and behaviors; delivering relevant training to health service professionals at each location; overseeing the implementation and improvement of the aforementioned engagement and competencies, practices, and behavior; and facilitating ongoing evaluation, modification, and sustainability. (ECF No. 1-1 at 9–10.) Vizient, for its part, would pay ATW $1,363,539.45 in service fees, exclusive of eligible reimbursable expenses, in thirty-six equal monthly installments of $37,876.09. (ECF No. 1 ¶ 5–6, 8.)

While the original schedule for the performance of ATW's contractual work provided that ATW would visit three University of Maryland Medical System Corporation facilities during the contract's first year, ATW alleges that Vizient "accelerated and compressed" the work such that ATW visited thirteen of the fourteen facilities within the first seven months. (*Id.* ¶ 7.) Vizient has not denied this allegation. The total cost of ATW's work in visiting the thirteen facilities was $672,354.68, or about 49 percent of the total sum Vizient had agreed to pay ATW. (*Id.*)

On March 30, 2023, Vizient terminated the contract without cause, pursuant to section 3.2 of the contract. (*Id.* ¶ 8; ECF 1-1 at 2.) In its termination notice, Vizient said it would "gladly pay ATW for the service fees and reimbursable expenses up to March 30, 2023." (ECF No. 1 ¶ 8.) Vizient paid ATW the eight monthly installments due to ATW through March 30, 2023, and reimbursed ATW for eligible reimbursable expenses through that date. (*Id.*) The total amount Vizient paid ATW in service fees thus was $303,008.75, or $369,345.94 less than the costs ATW incurred in performing contractual services for Vizient. (*Id.* ¶¶ 9, 11.) In response to ATW's request to be paid in accordance with the amount of the contracted work ATW had performed, on July 18, 2023, Vizient confirmed by letter its refusal to remunerate ATW beyond what Vizient had already paid to ATW. (*Id.* ¶ 9.)

On July 31, 2023, ATW filed a Complaint (ECF No. 1) with this Court alleging one count of breach of contract by Vizient, due to Vizient's refusal to pay what ATW views as an outstanding sum. (*Id.* ¶ 11.) ATW claims a minimum of $369,345.94 in damages, plus costs of the suit and any other relief the Court deems just and proper. (*Id.* ¶ 12.) Vizient moved to dismiss the Complaint for failure to state a claim, asserting that the contract did not obligate Vizient to pay ATW beyond the monthly installment schedule, regardless of the amount of work ATW had completed. (ECF No. 11-1 at 2.) In response, ATW argues that Vizient accelerated and compressed the work schedule, requiring ATW to perform half of the contracted work in 22.2 percent of the time and thus "constructively changing" the contract; that the scope of the work was not tied to the monthly payment schedule, and thus that ATW could recover money due to it based on the work it actually performed; and that Vizient either orally amended the contract or interpreted the contract's existing terms in promising to pay

3

ATW "all services fees and reimbursable expenses" after terminating, then reneged on that promise. (ECF No. 12.)

## LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), probes the legal sufficiency of a plaintiff's complaint. Fed. R. Civ. P. 12(b)(6); *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). To demonstrate the legal sufficiency of a claim, a plaintiff must allege sufficient facts which, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "conclusory allegations" unsupported by alleged facts are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). At the pleading stage, a court must draw all reasonable factual inferences in the Plaintiff's favor. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012).

## ANALYSIS

Under Delaware law,[2] to survive a motion to dismiss for failure to state a claim, a Plaintiff making a breach of contract claim must demonstrate (1) the existence of a contract, (2) the breach of an obligation imposed by that contract, and (3) harm caused to the plaintiff. *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Here, it is undisputed that a contract existed between ATW and Vizient. (*See* ECF No. 1-1.) ATW has

---

[2] The contract establishes, and the parties agree, that Delaware law governs the contract. (ECF No. 1-1 at 5.)

4

also alleged harm of at least $369,345.94 resulting from Vizient's alleged breach of that contract. (ECF No. 1 ¶ 11.)

ATW likewise has sufficiently pleaded that Vizient breached an obligation imposed by the contract between the parties. ATW provides three arguments to support its claim. First, ATW posits that the contract fails (a) to tie the work ATW was bound to perform to Vizient's payment schedule and (b) to specify how ATW was to be paid in the event of an early termination, and thus that Vizient breached by refusing to pay ATW in line with the work ATW completed. (ECF No. 12 at 5.) Second, ATW argues that Vizient constructively changed the contract by accelerating and compressing ATW's performance schedule. (*Id.* at 7.) Third, ATW argues that Vizient subsequently agreed to pay ATW for work performed ahead of the payment schedule in Vizient's notice of termination. (*Id.* at 8.)

The first argument is enough to carry ATW's claim past Vizient's 12(b)(6) motion. Delaware law allows the recovery of damages where contractual work is performed in advance of scheduled payment and the contract is terminated before payment occurs. *See VICI Racing, LLC v. T-Mobile USA, Inc.*, 921 F. Supp. 2d 317, 333 (D. Del. 2013) (allowing recovery of future payments after termination, where the payment schedule included deferred payments), *aff'd in part, vacated in part, remanded*, 763 F.3d 273 (3d Cir. 2014). Additionally, courts recognize payment based on to-date performance as a valid remedy in the event of termination. *See, e.g.*, *Najjar Indus. v. City of New York*, 451 N.Y.S.2d 410, 413 (1982), *aff'd sub nom. Najjar Indus. v. City of New York (Greenpoint Incinerator)*, 502 N.E.2d 997 (N.Y. 1986). As ATW points out, granting Vizient's motion to dismiss would be akin to allowing a contractually bound purchaser who paid ten percent up front for a seller's services to terminate—without cause and without

further payment obligation—when those services were halfway completed, merely because the contract contained a backloaded payment structure. (ECF No. 12 at 5–6 n.2).

While the contract's express terms provide for a fixed, monthly payment schedule, that schedule existed under the assumption that the contract would proceed for 36 months unterminated. (*See* ECF No. 1-1 at 11.) Indeed, Section 5.1 of the contract notes that ATW will perform the work "for a fixed rate of $1,363,539.45." (*Id.*) The only time the payment schedule and the work performed were certain to line up was upon the contract's completion. (ECF No. 12 at 5.) Nothing in the contract specified how ATW was to be paid for work performed in advance of the specified payment schedule—or for that matter how Vizient would be compensated for payments made in advance of the commensurate work to be performed—in the event of the contract's unilateral termination without cause. ATW pleads factual circumstances sufficient to survive Vizient's 12(b)(6) challenge. (*See* ECF No. 1 ¶¶ 6, 8.)

Where a party "requires a constructive change in a contract, [it] must fairly compensate the contractor for the costs of the change." *Kiewit Infrastructure West Co. v. United States*, 972 F.3d 1322, 1329 (Fed. Cir. 2020). The doctrine of constructive changes has its roots in federal contract law. *See E. Coast Repair & Fabrication, LLC v. United States*, 199 F. Supp. 3d 1006, 1028 (E.D. Va. 2016) (citing *Miller Elevator Co. v. United States*, 30 Fed. Cl. 662, 678 (1994)). Indeed, application of the doctrine is limited to situations which involve a government contract. *See Aviation Training Devices, Inc. v. FlightSafety Servs. Corp.*, No. 19-CV-0215-CVE-FHM, 2020 U.S. Dist. LEXIS 88823, at *6 (N.D. Okla. May 20, 2020) (citing *Miller Elevator Co. v. United States*, 30 Fed Cl. 662, 678 (1994)); *Merrell v. Cnty. of Sussex*, No. CIV. A. 91C-03-016, 1993 WL 476484

(Del. Super. Ct. Feb. 25, 1993), *aff'd sub nom. L.A. Merrell Const. Co. v. Cnty. of Sussex*, 633 A.2d 370 (Del. 1993).

Here, ATW claims Vizient unilaterally accelerated and compressed ATW's planned work schedule, thereby constructively changing the contract, before terminating the contract and reaping the financial benefits of doing so. (ECF No. 1 ¶ 7; ECF No. 12 at 7–8.) Accepting as true ATW's claims that the original work schedule provided that ATW would visit only three of the fourteen medical facilities in the first year, the constructive change doctrine provides sufficient grounds to move ATW's complaint past the pleading stage.[3] Neither ATW nor Vizient are government entities. (ECF No. 1 ¶¶ 1–2.) However, Vizient's original, ongoing contract is with the University of Maryland Medical System Corporation, which is a nonprofit corporation established by the Maryland General Assembly in 1984. (ECF No. 1-1 at 9); University of Maryland Medical System Corporation, Maryland Manual On-line (March 11, 2022), https://msa.maryland.gov/msa/mdmanual/25ind/priv/html/medf.html. As Judge Chasanow of this Court has previously found in the context of 42 U.S.C. § 1983, "UMMS is a governmental entity, that is, an arm or instrumentality of government." *Hammons v. Univ. of Maryland Med. Sys. Corp.*, 551 F. Supp. 3d 567, 584 (D. Md. 2021) (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995)); *see also Hammons v. Univ. of Maryland Med. Sys. Corp.*, No. CV DKC 20-2088, 2021 WL 4951921 (D. Md. Oct. 25, 2021) ("The Fourth Circuit has repeatedly found that universities, including the University System, are part of their state

---

[3] The Complaint (ECF No. 1) omitted this work schedule, though Vizient does not deny its existence.

governments under the arm-of-state test."). Thus, ATW's constructive change claim is sufficient for pleading purposes.

Where a contract contains a provision restricting the methods by which an amendment may be made, Delaware courts allow such restrictions to be waived orally or by course of conduct. *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972). In either case, the intent to alter the express terms must be clear. *Simon Prop. Grp., L.P. v. Brighton Collectibles, LLC*, No. CVN21C01258MMJCCLD, 2021 WL 6058522, at *3 (Del. Super. Ct. Dec. 21, 2021). Additionally, an amendment must be supported by consideration. *See Haft v. Dart Grp. Corp.*, 841 F. Supp. 549, 567 (D. Del. 1993). Past consideration is insufficient to support a contractual amendment. *See Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000).

Here, Section 10.2 of the contract expressly stated that amendments were to occur only in writing and under signature of both parties. (ECF No. 1-1 at 5.) Even taking as true ATW's claim that Vizient clearly manifested its intent to amend the contract when it said it would "gladly pay for the service fees and reimbursable expenses up to March 30, 2023," there is insufficient consideration to plausibly support an amendment. When Vizient sent its notice of termination, the purported consideration for the amendment (the accelerated work by ATW) *had already been performed. See Cont'l Ins. Co.*, 750 A.2d at 1232 ("Past consideration, as opposed to true consideration, however, cannot form the basis for a binding contract."). Thus, the consideration ATW provided to support the amendment was past and therefore invalid.

Nevertheless, Vizient's statement that it would "gladly pay ATW for the service fees and reimbursable expenses up to March 30, 2023" plausibly constitutes an interpretation of

existing contractual terms. (ECF No. 1 ¶ 8) Where a contract is ambiguous, Delaware law implores courts to "look beyond the language of the contract to ascertain the parties' intentions." *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012). According to the Complaint, ATW had incurred a balance of service fees totaling $369,345.94 as of March 30, 2023. (ECF No. 1 ¶ 9.) It was reasonable for ATW to expect that Vizient's statement that it would pay for the service fees and reimbursable expenses up to that date meant that the entirety of those fees and expenses would be covered, given that the contract did not specify payment for work ahead of schedule in the event of termination. Thus, ATW's claim against Vizient may proceed under its theories for compensation for performance prior to termination, constructive amendment, and reinterpretation, but not under a theory of amendment based on Vizient's statement in the March 30, 2023, notice of termination.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** this 12th day of July, 2024, that Defendant's Motion to Dismiss (ECF No. 11) is **DENIED**.

/s/
Richard D. Bennett
United States Senior District Judge